## Ohio & Mississippi Railway Company v. John D. Allender.

1. RAILROADS—*Right of the Public to Rely on Statements of Agents.*—A person who had purchased a ticket for a passage on a railroad train inquired of the agent about the train and was told it was an hour late. He went away to get his dinner and got left, the train being but forty-five minutes late. *Held,* that he had no legal right to rely upon the statement made by the agent as he could not infer from it that the train would not pass the station until an hour later.

2. CUSTOM—*Requisites to Establish, etc.*—A custom, to be availed of as establishing a right, must be certain, uniform and so general and continued as to justly create the presumption that the parties contracted with reference to it.

3. RAILROADS—*Ice upon Platforms of an Express Car.*—No legal

O. & M. Ry. Co. v. Allender.

duty is imposed upon a railroad company to remove ice from the railing or platform of the front end of the express car or to make such platform safe for passengers to get on or ride upon the same.

4. SAME—*Liability for Persons Not in Fact Passengers.*—A person who arrived in haste at a railroad station as the train was starting was asked by the engineer if he was a passenger for the train. He replied in the affirmative; the engineer slowed up the train and in his haste he inadvertently got upon the front platform of the express car from which, owing to his inability to maintain his hold, he was thrown off and injured. Assuming that the engineer invited him to board the express car at the front end, unless he had the right by such invitation to create the relationship of passenger, binding upon the company, and unless he, by reason of such invitation, ignorantly placed himself in a position of danger by which his injury was occasioned, or by subsequent negligence in operating the train while he was so on the platform his injury resulted, the invitation relied upon to create a liability would cut no figure.

5. SAME—*Right of an Engineer to Make Passengers by Invitation.*—Ordinarily an engineer of a passenger train has no right, by his invitation to a person to board a train, to create passenger relations.

6. NEGLIGENCE—*A Question of Fact—When this Applies.*—Negligence is held to be a question of fact, to be determined by the jury, and the courts will not generally disturb this finding; but this rule applies only when there is no good reason for believing the jury disregarded or misapprehended the evidence and were not misled by instructions to the prejudice of the defeated party.

**Trespass on the Case,** for personal injuries.—Appeal from the Circuit Court of Clay County; the Hon. EDMUND D. YOUNGBLOOD, Judge, presiding. Heard in this court at the February term, 1895. Reversed. Opinion filed July 1, 1895.

## STATEMENT OF THE CASE.

This case was before us at the February term, 1893, and is reported in 47 Ill. App. 484. The declaration then consisted of two counts, which are described and commented on in that opinion. After the cause was remanded, plaintiff filed an amended second count, a trial was had, defendant was found guilty, and plaintiff was awarded $1,000 damages by the verdict of the jury. Judgment was entered for plaintiff for this amount and costs and defendant took this appeal.

Appellee insists that by the additional acts of negligence averred in this amended count, a new cause of action was

stated, and thereby evidence became admissible which was not before competent. The acts of negligence charged in said count are: That defendant's agent, at the time plaintiff was at its depot waiting to get on defendant's train when it arrived, informed plaintiff it would be an hour late, and therefore plaintiff left the depot, intending to return in ample time to take said train for Olney, the place he had a ticket to, and was returning to depot thirty minutes earlier than the time fixed by defendant for its train to arrive and depart for Olney, but before he arrived at said depot, and while some distance therefrom, and thirty minutes earlier than the time so fixed by defendant, said train arrived at the depot and thereupon plaintiff ran and made great effort to get on the train before it departed, and when within about fifty feet of the train, it began to move out from the depot for Olney, and while he was yet thirty feet due south and distant from the engine, the engineer saw plaintiff and asked him if he was a passenger for said train; that plaintiff said he was and that he had a ticket to Olney, and the engineer then slowed up the train sufficiently for plaintiff to reach and get on the front platform of the express car of said train, that being the only car defendant gave him time and opportunity to get on; avers plaintiff, without noticing the kind of car he was boarding in his great haste, and being within easy and convenient reach of said car, as the engineer slowed up said train for him to get on, did board and get on the front platform of said car, all of which defendant well knew, and invited and permitted him to do so; that when plaintiff stepped upon said platform, defendant turned on steam and began to move said train so fast that plaintiff was unable to alight from said car; that he tried to open the door of said car, but it was closed and he was unable to get into it, or into any other place of safety, but was compelled to stand upon the platform until the happening of the grievances complained of; that "the platform and railing of said car were wet and icy and slick," of which fact he was ignorant when he boarded the same, but which the defendant well knew, or could have known by the exercise of reasonable

diligence; that by reason of the condition of the platform and railing and the great rate of speed at which said train was being run, and the rocking and jerking of the same occasioned thereby, he was unable to stand and remain on the platform, but while using every effort to hold on to said car, he was thrown with great force and violence from the same onto the ground and injured.

ANDREW J. LESTER and JOHN G. DRENNAN, attorneys for appellant.

C. K. THARP, G. A. HOFF, ALONZO HOFF, W. A. CULLOP and C. B. KESSINGER, attorneys for appellee.

MR. JUSTICE GREEN DELIVERED THE OPINION OF THE COURT.

We have set forth in the foregoing statement the acts of negligence charged and relied on to maintain this suit, and they may be summarized thus: Misstating the time and thus misleading plaintiff as to the time when the train would arrive at the station and depart for Olney, thereby causing him to be absent from the depot when the train arrived; next, in suffering and permitting the door of the express car to be closed and shut against him, although he demanded of defendant to open same; next, that notwithstanding defendant knew plaintiff was unable to get the door of said car open, and was in a perilous and dangerous position on the platform of the car, defendant put on a full head of steam and ran the train at such a great rate of speed that plaintiff was unable to get off of said car in safety, and was unable to stand and hold on to said car; next, in suffering and permitting ice to accumulate, cover and remain on the steps, railing and platform, thereby making it slick, unsafe and dangerous for persons entering or occupying the same, and while said steps, railing and platform were in such condition, running its train at a high, excessive and dangerous rate of speed, causing it to violently rock, jostle, jerk and vibrate from side to side, on account of all of which plaintiff was thrown off and injured.

The evidence does not sustain the charge that the agent of defendant misinformed plaintiff as to time of the arrival and departure of the train he was to take passage upon.

The testimony of plaintiff relied on to establish this charge of negligence, as it appears in the record, is, that he came to the depot shortly before the regular time for the arrival of the train, and asked the agent how long until the train came; that the agent said, " The train is an hour late; " that he, the plaintiff, turned to a passenger and said : " I will go and eat my dinner. I have an hour—10:45 to 11:45." It thus appears the agent did not tell plaintiff when the train would arrive or depart, but merely said it was then an hour late; and it is not claimed this was untrue, but on the contrary it was shown the train left East St. Louis one hour and fifteen minutes late and arrived at Clay City forty-five minutes late, so that it was quite probable the train was an hour late when the agent so informed plaintiff. Taking as true, all that plaintiff claims was said, without attaching any weight to the agent's denial, and it is quite evident he was not deceived or misled, but inferring if the train was then an hour late it would make up no time, but would be an hour late in reaching the depot, he acted on that inference, not justified by what the agent had said, and walked five blocks away, to get his dinner. It was his negligence and not that of the agent that prevented his being at the depot to get on the train there when it arrived, and availing himself of the facilities there afforded of getting into a passenger coach. He relied upon his own judgment, and delayed until no time was afforded him, as he says, to board a passenger coach, but hurriedly got on the front platform of an express car, an exposed and unsafe place. He can not justly charge the consequences of his own negligence in this regard to any statement made to him by defendant's agent. It is averred that defendant was guilty of negligence in permitting the door of the express car to be closed against plaintiff, although he demanded it should be opened, and thereby plaintiff was

deprived of the legal right to pass into said car, a place of safety, and compelled to remain on an icy platform, a place of danger. The legal right thus claimed is predicated upon an alleged custom of the defendant, whereby passengers were permitted to enter the door at the front end of express cars on its trains, ride therein or pass through into the passenger coaches. The custom, to be availed of as establishing the right thus claimed, must be certain, uniform, and so general and continued as to justly create the presumption that the parties contracted with reference to it. The evidence not only fails to prove such a custom existed, but clearly shows the contrary, and plaintiff himself admits he does not remember that he went in at the door at the front end of an express car on defendant's trains within five years prior to the day he was injured. Hence the proof fails to establish the right, and defendant was not guilty of negligence in the respect charged.

In this connection it is proper to say no legal duty was imposed upon defendant to remove ice from the railing or platform at the front end of the express car, or make it safe for passengers to get on or ride upon the platform. In fact, passengers were notified not to do so, and a depot platform and safe and suitable means to get on passenger coaches were provided. Moreover, it appears plaintiff knew, or by the exercise of reasonable care might have discovered, the condition of the platform and railing. He says the weather was cold. It was raining and sleeting; that he stood within a few feet of the car platform. He must have known the effect of cold and rain and sleet would be the formation of ice on an exposed surface, and from the place he stood could have seen such a condition had been so occasioned.

But it is said defendant's engineer invited plaintiff to get on this icy platform, and thus put himself in a place of danger, then ran the train so fast that plaintiff was unable to alight from the car; that by reason of the condition of the platform and railing and the great rate of speed at which said train was being run, and the rocking and jerk-

ing of the same occasioned thereby, plaintiff was unable to stand and remain on the platform, but while using every effort to hold on to said car, he was thrown with great force and violence from the same onto the ground and injured. It is not claimed or proved that defendant's track, engine, or appliances were defective or in bad order, nor was it proved that the rate of speed was unusual or dangerous. The train was late and those in charge increased the speed to make up time, as was usual under such circumstances. Plaintiff was a man of mature years; had lived at Clay City thirty years, during all which time he had frequently traveled as a passenger on defendant's trains and had frequently shipped by express, on express cars in its trains, furs and other articles, and was acquainted with the mode of transacting passenger and express business at that place. The depot and platform there had been maintained for thirty years, and plaintiff knew that was the only place for the reception and discharge of passengers at that station provided by defendant and held out to the public as the place to be used for that purpose. He also knew, on the day in question, the time of the arrival and departure of trains, and that the train he intended to take was late and would make but a short stop there, and that the depot was on the north side of the track, and that persons boarding the train from the south side would not be observed by the conductor who had control of the train, and whose place to take charge of and give direction to passengers about to go on the train would be the depot platform.

With all this knowledge, he boarded the train on the south side, and was seen by no one of the train men but the engineer, and by his own negligence delayed his arrival at the train until time was not afforded him to board it at the depot platform and enter a passenger coach and place himself under the care and protection of the defendant as a passenger, but, as he says, necessitated his taking passage on the front platform of an express car, which his knowledge and experience taught him was not a place provided for passengers to ride upon. Unless the alleged invitation of the

engineer was the act of defendant, absolving plaintiff from the duty of care and caution for his personal safety, and creating liability on the part of defendant, plaintiff took the chances of being able to go into the passenger coach and thereby place himself in the relationship of a passenger, or of incurring, at his own risk, the peril of the situation in which he had voluntarily placed himself. Assuming there was evidence tending to show the engineer invited plaintiff to board the express car at the front end, yet unless the engineer had the right, by such invitation, to create the relationship of passenger between plaintiff and defendant, binding upon the latter, and unless plaintiff, by reason of such invitation, ignorantly placed himself in a position of danger, and thereby his injury was occasioned, or by subsequent negligence in operating defendant's train while plaintiff was riding on the car platform, his injury resulted, the invitation relied on to create liability would cut no figure. The right to bind the company by such invitation of an engineer is denied in C. & A. R. R. Co. v. Michie, 83 Ill. 427, and in C. B. & Q. R. R. Co. v. Casey, 9 Ill. App. 632, it was held that an engineer ordinarily has no right, by his invitation to a person to board a train, to create passengership relations, and this ruling is fortified by numerous authorities cited in the opinion. Moreover, appellee was not misled by the engineer, or induced to enter upon and occupy a place of danger in ignorance of the fact it was such. As before said, he had knowledge of the mode adopted by defendant in transacting its usual business. The condition of the steps, railing and platform was open to his view and inspection. He knew or ought to have known from long experience the car he boarded was an express car and the front end platform was not a proper or safe place for him to ride upon and that if he voluntarily did so it was at his own risk. He says he did not look—he had no time to do so; but his own negligence in failing to reach the train in time was the cause of this, not any act of defendant. It is said in the opinion in C. B. & Q. v. Casey, *supra:* "The system by which railway companies conduct their business of carrying passengers and freight has now been so long in oper-

ation and is being conducted with such a degree of uniformity, that its general features must be presumed to be known and understood by the public." In addition to this presumptive knowledge, appellee had actual knowledge, by long experience, of these matters, and was bound to use it for his own protection. Failing to do so, was want of care that would bar his recovery, unless negligence in operating the train after he had taken a dangerous position thereon, unnecessarily increased the danger and caused his injuries. Such negligence was not established by the evidence.

The second instruction for plaintiff had no evidence to support it and was calculated to mislead the jury, to the prejudice of defendant. The third instruction given for plaintiff was also erroneous, for like reasons. It is true, negligence is held to be a question of fact, to be determined by the jury, and courts will not generally disturb the finding, but this rule applies only where there is no good reason for believing the jury disregarded or misapprehended the evidence, and were not misled by instructions, to the prejudice of the defeated party.

An examination of the record satisfies us the facts and the rulings of the court in giving the instructions for plaintiff complained of, forbids the application of this rule, and no right of recovery was established by the proof.

Adhering, as we do, to the former opinion, it is unnecessary to again cite the cases in support thereof, or repeat what is there said touching the authorities cited in support of appellee's contentions. The judgment is reversed and the cause is not remanded.