THE PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY v. ADAMS, BY HIS NEXT FRIEND.

[No. 2,865. Filed Feb. 1, 1900. Rehearing denied June 22, 1900.]

RAILROADS.—*Injury at Crossing.*—*Complaint.*—A complaint against a railroad company for personal injuries alleging that plaintiff approached defendant's tracks and stopped his horse and dray and listened to ascertain whether a train standing near was about to move, when an employe of defendant, in charge of the train, standing on the main track at the rear of the train, knowing plaintiff was about to cross the tracks and had stopped to listen, motioned with his hand for him to drive across the tracks, and that plaintiff, in attempting to cross the tracks as directed, was struck by the train, and injured, is insufficient, where it was not shown that such employe was acting in the line of his duty, or that he had any power or authority to bind the defendant by his act.

From the Madison Superior Court. *Reversed.*

*John L. Rupe,* for appellant.

*W. A. Brown,* for appellee.

BLACK, J.—A demurrer to the complaint of the appellee against the appellant for want of sufficient facts was overruled in the Henry Circuit Court, where this cause was commenced. An answer in denial was filed, and the venue was then changed to the court below, where the cause was tried by jury, and a general verdict was returned in favor of the appellee for $3,000, and judgment was rendered accordingly.

In the complaint there were allegations describing at length the location of the appellant's railway tracks and the surroundings, in the town of New Castle. It was shown that a street in said town known as Broad street, extending east and west, was crossed by the main track of the appellant's railway running in a northwesterly direction; that at a short distance east of the crossing and north of said main track was the freight depot with an elevated platform, along the north side of a side-track which extended from a

point some distance to the eastward and was parallel with the main track and between it and said depot; that another side-track of the appellant lay some distance north of said first mentioned side-track and nearly parallel with it, and extended from the eastward to a point near the east end of said depot. Said side-tracks were used by the appellant and the public generally in receiving and delivering freight. From said Broad street and the west side of the main track at said crossing there was constructed and for many years there had been maintained a roadway, extending from the street southeastward along the south side of said main track several hundred feet to a point east of said depot and south of the main track, where the appellant had constructed and for many years had maintained, and still maintained, a safely constructed crossing for wagons and teams across the main track and the first mentioned side-track, affording a way of ingress to and egress from the cars standing upon said tracks, for the purpose of delivering and receiving freight, and along this roadway and crossing was the customary way of going to and from said side-tracks to deliver and receive freight, and the appellant constructed and maintained the roadway and crossing for such purpose alone and for the accommodation of the public in transacting freight business with the appellant. It was alleged that on, etc., the appellee was a young man about eighteen years of age, and was in the employ of his brother, named, a dealer in poultry, eggs, and produce in said town; that in the course of his duties as such employe the appellee was required to deliver and receive freight to and from the appellant at said side-tracks by means of drays; that a short time prior to the date mentioned, a large number of egg crates, used in packing and shipping eggs, had been shipped to appellee's brother, which the appellant had transported in a box car, and appellant had placed said car upon said side-track farthest north, and had notified appellee's said brother of the arrival thereof and that they were delivered

to him for his use; that appellee, in the course of his duty
as such employe, took a dray to which was hitched one horse
and drove to said car for the purpose of draying a portion
of the crates to his said brother's place of business; that
the dray was an ordinary platform dray, safely and prop-
erly constructed, and the horse was a docile, gentle horse'
used and inured to cars and moving trains, and had been
used by appellee's said brother continuously in, and about
the cars in receiving and delivering freight for more than
a year prior to said time; that when the appellee reached
the crossing of said street and railroad, proceeding from the
west in the regular course of travel from his said brother's
place of business to the situation of said freight car, a
freight train of the appellant was standing on the main
track headed to the northwest; that he turned and drove his
horse and dray from said street to the southeast on said
traveled way along the south side of said main track and
along the south side of said freight train to the point where
said crossing southeast of the freight depot was constructed,
and he there drove across to the north side of said first men-
tioned side-track and then turned eastward and drove from
200 to 250 feet further to said car containing the crates,
which he loaded in a usual, proper, and careful manner,
described; that he was engaged in loading the crates from
ten to fifteen minutes; that when he so crossed the railway
going to said car, said train had been cut, leaving a caboose
standing from 300 to 500 feet east of said crossing and the
rear end of the other part of the train standing within about
ten feet of said crossing; that the freight train was a long
train, and the engine attached to it was from 600 to 800
feet northwest of the place where the appellee had so crossed
the tracks.   The pleading described obstructions which hid
from his view the caboose and all of the freight train except
about fifteen or twenty feet of the rear end of the hindmost
car of the train.  It was alleged that as soon as he had loaded
his dray he drove along the south side of the northern side-

track until he came to a point where one so driving would naturally turn the horse to the left, heading in a southwesterly direction across said tracks, until he reached a point about fifty feet from the railway track, where he stopped his horse and dray and listened for the purpose of ascertaining whether or not the train was about to move; that at this time one of the employes of the appellant in charge of said train was standing in the main track upon said crossing within a few feet of the rear end of said freight car and train. It was alleged that said employe knew, and had good reason to know, that said train was then about to back across said crossing for the purpose of coupling on to said caboose; that knowing and having good reason to know that fact, said employe, knowing the appellee was approaching said track and had stopped as aforesaid, negligently and carelessly wholly failed to warn him or to give him any notice or indication whatever that said train was about to move over said crossing as aforesaid, and, on the contrary, negligently and carelessly motioned the appellee with his hand to drive across said crossing; that upon his giving said motion, the appellee, believing that said train was not about to start or move, and relying upon said signal, started in a slow walk to drive across said track, and, just as his horse's head was approaching the crossing of the main track, the appellant's employe in charge of said train negligently and carelessly, without theretofore or at any time sounding any whistle or ringing the bell, suddenly started said train back to and over said crossing; that the starting of the train and the bumping of the cars created a very considerable noise and confusion; and the moment that the appellee saw the train was moving, or became aware thereof in any way, he suddenly pulled his horse back by means of the lines, and the horse, becoming frightened at the movement of the train and the noise thereof, turned to the right and to the northwest, in the direction of the switch track, and momentarily the hind end of the train struck the dray

with great force, overturning and throwing it against the platform of the freight house upon the north side of said switch track, and throwing the appellee forward upon the ground upon and near the north rail of the main track; that in said collision the appellant's cars in said train mashed and maimed his right arm from the hand to the elbow, in such manner that it became and was necessary to amputate his right arm above the elbow; that said injury was caused wholly and entirely by the carelessness and negligence of the appellant's employes in charge of said train as aforesaid, and without any fault, negligence, or want of care upon the part of the appellee in any particular whatever. The additional averments related to the damages sustained by the appellee.

It is suggested, on behalf of the appellant, against the complaint that no facts are pleaded from which the court may know that the employe who stood behind the train was acting within the line of his duty, or that he had any power or authority to bind the appellant by his act.

It is not shown in what respect there was negligence in backing the train. The appellant had a right to back the train upon its track for the purpose of coupling it with the caboose. The mere act of backing the train in the prosecution of its business, with the incidental noise, was not wrongful, and was not in itself a violation of any duty which the appellant owed to the appellee.

It is alleged that the appellant's employe in charge of the train negligently and carelessly, without sounding the whistle or ringing the bell, suddenly started the train, but it is not stated that the failure to sound the whistle or to ring the bell was negligent, or that there was any negligent failure of the appellant to give warning of the movement of the train. It is not stated that the train was negligently run against or upon the appellee or his dray. It does not appear that the employe who started the train had any notice or knowledge of the appellee's near approach and hazardous

situation, or that his alleged negligence in starting the train consisted in his failure to act prudently in view of knowledge or notice of any facts which ought to have deterred him from moving the train in the regular pursuit of his duties. A situation was shown indicating the propriety of backing the train to take up the caboose, at any time when the employe who caused the train to back was ready to do so, unless he had knowledge or notice of some fact which would make it proper to wait longer. No negligence is attributed to any one in failing to give notice of the dangerous situation of the appellee to the employe who started the train, who does not appear to have known at any time of the appellee's situation. It is not alleged that the appellant backed the train or that it by its servant did so; and as to the appellee, it could not be negligence of the employe who started the train in the manner described for him to do so without some notice which would raise a duty toward the appellee. The manner of starting the train backward with suddenness, causing the violent bumping of the cars together, might have been unskilful and negligent, but so far as the employe who did it was concerned this would not be a violation of duty toward the appellee, of whose presence he had no knowledge or notice.

If, then, the allegations relating to the servant who stood upon the main track in rear of the train be left out of consideration, there would not be enough to charge the appellant with actionable negligence.

This person was alleged to be one of the appellant's servants in charge of the train, and he, it was averred, with knowledge of the appellee's approach and of the fact that the train was about to back, failed to warn him to stop, and beckoned him on. The wrong, if any, which proximately caused the injury, was the act of this servant in beckoning to appellee with knowledge that the train was about to back.

It does not appear that he, in this conduct, was pursuing his service for the appellant within the scope of his employ-

ment, unless it can be said that the court may presume, as matter of law, that such conduct is within the scope of the employment of any and every servant of a railroad company who is one of its employes in charge of any freight train. It is generally known to the public that the different members of the crew of a freight train do not all have the same kind of employment, do not all perform in the regular course of their employment all kinds of service incident to the running of such trains and the transportation of freight thereby.

The appellee was not a trespasser, or a mere licensee, or a servant of the appellant. His relation to the appellant was that of an invited business visitor, with respect to whom a duty devolved upon the appellant to have its premises in a reasonably safe condition, and, by proper safeguards or warning, to enable him, by the exercise of ordinary care, to avoid, while upon the premises engaged in the business for which he was invited, or while entering or leaving the premises, damage from an unseen or unusual danger from want of such safe condition, of which the appellant had knowledge or by the exercise of reasonable vigilance would have had knowledge. *Indermaur* v. *Dames,* L. R. 1 C. P. 274; *Indermaur* v. *Dames,* L. R. 2 C. P. 311; *Tobin* v. *Portland, etc., R. Co.,* 59 Me. 183; *Carleton* v. *Franconia, etc., Co.,* 99 Mass. 216; *Nave* v. *Flack,* 90 Ind. 205, 46 Am. Rep. 205; *Evansville, etc., R. Co.* v. *Griffin,* 100 Ind. 221, 50 Am. Rep. 783; *Pennsylvania Co.* v. *Marion,* 104 Ind. 239; *Wabash, etc., R. Co.* v. *Locke,* 112 Ind. 404, 2 Am. St. 193; *Indiana, etc., R. Co.* v. *Barnhart,* 115 Ind. 399; *Chicago, etc., R. Co.* v. *DeBaum,* 2 Ind. App. 281; *Howe* v. *Ohmart,* 7 Ind. App. 32; *Toledo, etc., R. Co.* v. *Hauck,* 8 Ind. App. 367; Elliott on Railroads, §1248.

In the case before us there was no defective condition of the premises or of any of the appliances used thereon. The backing of the train which occasioned the injury was not a wrong inherently and of itself, or in the absence of wrong

attributable to the appellant on the part of the servant in rear of the train. The backing of the train was an act done in the ordinary prosecution of the business of the appellant and one proper to be done for such purpose. The appellee had a right to use for egress the way over the main track by which he had entered. The appellant also had a right to back its train upon that track over the crossing in the manner in which it was done. It was not a case where negligence of the appellant could be presumed from mere backing of the train and the occurrence of the injury therefrom; but it was a case wherein, to render the appellant responsible for that injury, it was incumbent upon the appellee to show negligence upon the part of the appellant.

It is not alleged that the appellant itself or the appellant by its officers, agents, or servants, or any of them, negligently did any act or negligently omitted anything; all the negligent acts and omissions charged are alleged as acts and omissions of the appellant's servants. To hold that the complaint shows any negligent act or omission for which the appellant may be considered responsible, it must be determined that the pleading shows that such alleged wrongs of the servants were committed by them in the course of their employment.

It is a familiar rule that for the acts of a servant his master is responsible to third persons only when the servant is acting within the scope of his employment. *Noblesville, etc., Co.* v. *Gause,* 76 Ind. 142, 40 Am. Rep. 224; *Smith* v. *Louisville, etc., R. Co.,* 124 Ind. 394, 400.

A negligent act of a servant for which the master will be responsible must not only be an act done while the servant is engaged in the performance of his service but also must be an act which pertains to the duties of the servant's employment.

The test of the liability of the master for the torts of his servant is not whether or not the act was done in accordance with his instructions, but is whether or not the servant at

the time of committing the tort was acting within the scope of his authority in the business of the master. If the act was done within the scope of authority, and while the servant was engaged in his master's business, the latter is bound for it. *Snyder* v. *Hannibal, etc., R. Co.,* 60 Mo. 413; *Chicago, etc., R. Co.* v. *Casey,* 9 Ill. App. 632; *Gregory* v. *Ohio River R. Co.,* 37 W. Va. 606, 16 S. E. 819.

In *Barwick* v. *English Joint Stock Bank,* 2 Ex. 259, it was said, per Willes, J.: "The general rule is that the master is answerable for every such wrong of the servant or agent as is committed in the course of the service and for the master's benefit, though no express command or privity of the master be proved." And it was said that when the master has not authorized the particular act, but he has put the agent in his place to do that class of acts, he must be answerable for the manner in which the agent has conducted himself in doing the business which it was the act of his master to place him in. See Webb's Pollock on Torts, 88.

A complaint for injury caused by negligence of the defendant's servant, which did not show the act of negligence to have been committed while the person who committed it was engaged in the service and to have been in some way connected with the doing of the service, was held insufficient in *Helfrich* v. *Williams,* 84 Ind. 553.

In *Louisville, etc., R. Co.* v. *McVay,* 98 Ind. 391, 394, 49 Am. Rep. 770, it was said that the authority of an agent, officer, or employe of a corporation will be presumed from the nature of the duties imposed upon him; but "in order that this presumption may be indulged, it must in some way be known what those duties are." See, also, *Smith* v. *Louisville, etc., R. Co.,* 124 Ind. 394, 400.

In *Pennsylvania Co.* v. *Rusie,* 95 Ind. 236, an action against a railway company for the killing of stock, the complaint, which was first questioned by motion in arrest, was assailed in argument on the ground that it did not charge a

wrong upon the railroad company, but charged it upon the company's servants, without any averment that they were in the line of their employment in operating the train. It was held, that the objection so presented could not prevail, for the reason that the action was commenced before a justice of the peace.

The allegations in such a case, indicating the nature of the servant's employment and showing that the negligence of the servant of which complaint is made occurred while the servant was engaged in his employment as such, or was acting within the line or scope of his employment, are allegations of material facts which must be proved. See *Oakland City, etc., Soc., v. Bingham,* 4 Ind. App. 545; *Curtis v. Dinneen;* 4 Dak. 245, 30 N. W. 148; *McCann v. Tillinghast,* 140 Mass. 327, 5 N. E. 164; *Evansville, etc., R. Co. v. Baum,* 26 Ind. 70; *Banister v. Pennsylvania Co.,* 98 Ind. 220; *Lake Shore, etc., R. Co. v. Peterson,* 144 Ind. 214, 222.

In an action against a railroad company for a personal injury, it was objected that the complaint was defective in failing to aver that the agents and servants of the defendant were acting within the line of their duty when they committed the wrong complained of; but the court said that the complaint "in effect averred that it was the defendant, acting through its agents and servants, which had injured the plaintiff;" and it was held that it was equivalent to an averment that the injury was inflicted by the defendant, acting through its duly authorized agents and servants; and that this made it at the trial a question of evidence as to whether the persons who performed the acts charged were the agents and servants of the defendant and acting at the time within the lines of their respective duties. *Wabash R. Co. v. Savage,* 110 Ind. 156; *Ohio, etc., R. Co. v. Collarn,* 73 Ind. 261, 38 Am. Rep. 134.

It may be difficult to determine whether upon the facts of a particular case a servant was acting within the scope

of his employment, or was acting upon his own responsibility and not in his capacity of servant; but we are not here passing upon the effect of evidence; we decide nothing upon the question whether or not the servant who misled the appellee was in fact acting at the time within the scope of his employment. The question before us is one relating to pleading, and it cannot be doubted that, however the matter may take shape through the evidence, the pleading must so connect the master with the act or omission of the servant, that it may be seen from the averments that the master is liable because the servant represented him in the doing of the wrong.

Whatever may be true with reference to drawing inferences from evidence, and however improper it may be for the court to interfere with the decision of questions of fact within the province of the jury, the pleadings are within the supervision of the court alone, and the question as to the sufficiency of a pleading must be decided as a question of law. In deciding upon a demurrer the meaning of a pleading must be gathered from what is expressed therein. It can not be held that one is responsible for a wrong simply because it was committed by one who at the time was his servant, or without a sufficient showing that the servant was acting within the scope of his employment.

At first view, the question may be regarded perhaps as not free from difficulty. Two servants of the appellant are mentioned in the pleading in such manner as to indicate them as members of the train's crew. Can it reasonably be said that it would be within the line of service for which the engineer or the fireman was employed by the appellant for him to go to the rear of the long freight train, and there, without special direction or authority from the appellant, or any special or extraordinary reason, to interfere with, control, or direct the conduct of business visitors upon the appellant's premises, such action of the servant not having relation to the protection of the train or the opera-

tion thereof by him? If in the pleading it were stated that the appellant negligently did the act in question, or that the appellant by its servant negligently did it, we need not and do not decide how such allegation might be proved.

Without anticipating what would be a proper conclusion under the evidence showing a particular capacity in which the servant in question was employed by the appellant, we think it not allowable to relax the proper strictness of the law of pleading so far as to hold that the complaint before us sufficiently showed that the servant in rear of the freight train, as to the action wherein he is alleged to have been negligent, which was the proximate cause of the injury, was acting within the scope of his employment.

The judgment is reversed, and the cause is remanded, with instruction to sustain the demurrer to the complaint.