THE WABASH RAILROAD COMPANY *v.* LINTON.

[No. 3,440.  Filed April 26, 1901.]

PLEADING.—*Wilful Killing of Horse.*— *Contributory Negligence.* — An allegation of freedom from fault or negligence on the part of the plaintiff is not necessary in an action against a railroad company for wilfully killing plaintiff's horse. *p. 596.*

MASTER AND SERVANT.—*Complaint.*—*Charging Wilful Killing by Servants but not by Defendant.*—Where a complaint against a railroad company for wilfully killing plaintiff's horse alleges that the act was done by defendant's agents and employes, without showing that the agents and employes were acting in the line of their employment, or under the direction of defendant, it does not state a cause of action against defendant. *pp. 596-599.*

From the Warren Circuit Court.  *Reversed.*

*E. F. McCabe, W. V. Stuart, E. P. Hammond* and *D. W. Simms,* for appellant.

*C. R. Milford,* for appellee.

HENLEY, C. J.—This was an action for damages resulting from the alleged wilful killing by appellant of appellee's horse. The complaint was in two paragraphs. A demurrer was sustained to the first paragraph of complaint, and overruled to the second paragraph. As the case must be reversed on account of the insufficiency of the second paragraph of complaint, this will be the only question considered by the court.

It is admitted by appellee that the theory of his complaint is that the injury was wilfully committed. The objection that the complaint does not aver that the appellee was without fault or negligence is therefore not well taken. The next objection to the complaint is that there is no charge made against appellant, but that the acts complained of, it is charged, were done by agents of appellant, and it is not directly alleged that the agents were acting in the line of their duty. The allegations of the complaint, in so far as they might be applicable to a discussion of this question,

are as follows: That while the mare was on the right of way, the defendant's agents and employes who were propelling a hand-car and riding thereon came along the railroad track from the south, going at a rapid rate of speed in a northerly direction, and that while so traveling they saw the mare on the railroad track between the rails thereof; that after they saw her they wilfully and intentionally scared her by violent gestures and by loud and unusual noises and shouts; "that after the mare was scared and started to run as aforesaid, the said agents wilfully and intentionally continued to make said violent gestures and said loud and unusual and unnecessary noises, and wilfully and intentionally continued to propel the hand-car at the same high speed or even faster than when the mare was first scared, thereby wilfully causing her to run rapidly on and along the railroad track between the rails thereof in a northerly direction for a distance of about a quarter of a mile, never leaving the track for all that distance, the said agents and employes propelling the hand-car at such a rate of speed as to keep about fifty feet behind her. During all the time occupied by her in running said quarter of a mile they continued wilfully and intentionally to make such gestures and loud and unnecessary noises and shouting and hallooing all of said time; that at a point about a quarter of a mile in a northerly direction from the place where the said mare was first scared by said agents and employes as above set forth there was at that time a culvert about five feet deep, the same being covered between the rails of the railroad track with ties and rails in such a manner and with places left open between said ties to such an extent as to render it unsafe and dangerous for a horse or other animal to cross over it between said rails, and especially so when said horse or other animal was running at a high rate of speed; that the location and dimensions of said culvert were well known to said agents and employes at the time they scared and frightened said mare and the facts as to its being dangerous for horses

or other animals to cross the same, either going over it slowly or at a high rate of speed, were well known to the agents and employes during the time said mare was frightened by them and caused to run said quarter of a mile as above stated; that after the mare was scared and caused to run said quarter of a mile as aforesaid she was wilfully caused to run into said culvert between the rails of the railroad track, and into the open spaces between the ties by said actions, gestures, noises, shouting and hallooing of the agents and employes, and by their close pursuit of her on the hand-car, all of which was wilfully made by them until she ran and plunged into said culvert."

It will be observed from the reading of the complaint that appellee has at no place charged the appellant with the commission of any of the acts for which he seeks to hold appellant liable. The charge in either instance is that the act or acts were done by the agents and employes of the appellant, and it does not appear at any place in the complaint that such agents or employes in the commission of such acts were acting in the line of their employment, or that they were doing what they were hired to do, or were acting under the direction of the appellant. It seems to be well settled that neither a wilful and tortious or negligent act resulting in injury, if done by an agent acting without the course of his employment can be the subject of recovery against the principal. *Louisville, etc., R. Co.* v. *Kendall,* 138 Ind. 313; *Louisville, etc., R. Co.* v. *Palmer,* 13 Ind. App. 161; *Helfrich* v. *Williams,* 84 Ind. 553; *Wabash R. Co.* v. *Savage,* 110 Ind. 156; *Louisville, etc., R. Co.* v. *Wood,* 113 Ind. 544; Wood on Master and Servant, §205; *Lake Shore, etc., R. Co.* v. *Peterson,* 144 Ind. 214; *Brown* v. *Jarvis, etc., Co.,* 166 Mass. 75, 43 N. E. 1118, 32 L. R. A. 605, 55 Am. St. 382.

A case peculiarly in point, this being a question of the sufficiency of the complaint, is the case of *Pittsburgh, etc., R. Co.* v. *Adams,* 25 Ind. App. 164, in which it is held that if the act which resulted in the injury of the party was an

act done by the servant, the complaint must show that the servant or agent was acting in the line of his duty. In the course of the opinion the court, by Black, J., said: "It may be difficult to determine whether upon the facts of a particular case a servant was acting within the scope of his employment, or was acting upon his own responsibility, and not in his capacity of servant; but we are not here passing upon the effect of evidence; we decide nothing upon the question whether or not a servant who misled the appellee was in fact acting at the time within the scope of his employment. The question before us is one relating to pleading, and it can not be doubted that, however the matter may take shape through the evidence, the pleading must so connect the master with the act or omission of the servant that it may be seen from the averments that the master is liable because the servant represented him in the doing of the wrong. Whatever may be true with reference to drawing inferences from evidence, and however improper it may be for the court to interfere with the decision of questions of fact within the province of the jury, the pleadings are within the supervision of the court alone, and the question as to the sufficiency of a pleading must be decided as a question of law. In deciding upon a demurrer the meaning of a pleading must be gathered from what is expressed therein. It can not be held that one is responsible for a wrong simply because it was committed by one who at the time was his servant, or without a sufficient showing that the servant was acting within the scope of his employment."

For the reasons given the complaint in this case is fatally defective, and the lower court erred in overruling the demurrer addressed to it. Judgment reversed, with instructions to the lower court to sustain the demurrer to the second paragraph of the complaint.