Dutch *et al. v.* Anderson *et al.*

---

No. 5509.

## DUTCH ET AL. *v.* ANDERSON ET AL.

PRACTICE.—*Motion for New Trial.—Rulings Assigned as Causes.—Exceptions.*—A motion for a new trial "because of error of law" is too general in its terms. The particular rulings to which exceptions were taken, and because of which a new trial is asked, must be specified in the motion.

SAME.—*Construction of Contract.—Province of Court.*—It is the province of the court to construe a contract given in evidence, and, if asked, to instruct the jury accordingly.

MORTGAGE.—*Payment in Sawing Logs.—Log Measure or Board Measure.—Satisfaction.—Evidence.—Contract Construed.—Reversal and New Trial Granted.*—Where a mortgagor agreed, in writing, to pay the mortgage debt in sawing lumber, at specified rates per one hundred feet for walnut and oak and other logs, and, upon trial of an issue as to its satisfaction, wherein the principal matter of controversy was whether the contract provided for log measure or board measure, and the jury, construing the contract as providing for log measure, found the mortgage to be satisfied. On appeal,

*Held,* that the Supreme Court, in the absence of any evidence of construction by the lower court, construes the obligation to mean that the price stipulated was for lumber sawed and prepared for the market, and that

the verdict of the jury was not sustained by sufficient evidence, they having adopted a false basis in their estimate of the amount paid on the mortgage.

SAME.—The terms of such obligation, in the absence of evidence that any deception was practiced upon the mortgagor, or that he did not or could not read it, or that it was not drawn in strict conformity with the understanding and purpose of the parties, are conclusive.

From the Boone Circuit Court.

*G. H. Chapman, U. J. Hammond, F. Heiner* and *P. H. Dutch*, for appellants.

*J. S. Scobey*, for appellees.

NEWCOMB, C.—The appellants were mortgagees of a saw-mill, and Anderson, one of the appellees, was a purchaser of the same mill, at a sheriff's sale, on an execution against the property of Matthews, the mortgagor, issued subsequent to the mortgage to the appellants. The mortgage was dated October 16th, 1873, and was duly recorded. On May 12th, 1875, the appellants commenced an action to recover possession of the mortgaged property, making Anderson, Matthews and the other appellees defendants thereto. The defendants severally answered by a denial of the complaint. A jury trial was had, which resulted in a finding for the defendants, that they were entitled to the possession of the property in controversy, and that it was of the value of $1,000.

This was followed by a judgment for a return of the property, and in case of the failure of the plaintiffs to deliver the same, then that the defendants should recover from the plaintiffs one thousand dollars.

The plaintiffs moved for a new trial, for the following alleged causes:

1. That the verdict was contrary to law.
2. That the verdict was not sustained by sufficient evidence.
3. That the verdict was contrary to law and the evidence.
4. "Because of error of law."

The motion was overruled, and the plaintiffs excepted.

During the progress of the trial, the plaintiffs reserved exceptions to divers rulings of the court in excluding evidence offered by them, and in admitting evidence offered by the defendants over their objections, but the questions intended to be saved by such exceptions can not be considered by us for the reason that the supposed errors of the court were not assigned as causes for a new trial. A motion for a new trial "because of error of law" is too general in its terms. The particular rulings of the court to which exceptions were taken, and because of which a new trial is asked, must be specified in the motion. Buskirk's Practice, 244 ; *Schofield* v. *Jennings*, 68 Ind. 232 ; *Weireter* v. *The State*, 69 Ind. 269 ; *Hyatt* v. *Cochran*, 69 Ind. 436.

The only question for us to consider is the sufficiency of the evidence to sustain the verdict.

The mortgage was conditioned to secure the payment of two notes of $337.50 each, one of which had been paid in full, and $100 credited on the other, before the commencement of the action ; and also to secure the performance of the following obligation of Matthews, the mortgagor : "This indenture certifies that I, the undersigned, William B. Matthews, do hereby promise Kramer and Dutch that I will pay them the sum of fifteen hundred dollars in sawing, at the following rates per hundred feet for sawing, to wit : For sawing walnut lumber, and hearting and edging the same, the hearting and edging to be done on edging table now in the mill, this day bought of Kramer and Dutch, and for which this sawing is to be part payment, the sum of sixty cents per hundred feet ; for sawing oak, fifty cents per hundred feet ; and all other kinds of logs the same price. The said Kramer and Dutch shall be entitled to such of the edging strips as they may need for sticking lumber, provided they allow for them what they would make thrown into board measure ; that is, what the sawing of them would come to at the same rates per hundred feet as other sawing ;

and the said Matthews agrees to do said fifteen hundred dollars worth of sawing at the prices herein stated, as fast as the said Kramer and Dutch shall deliver their logs upon the logway of said mill, or as close as the same can be delivered thereto, and to saw said lumber in a workmanlike manner; to use due diligence to prevent any damage or waste to the lumber or logs of the said Kramer and Dutch, and not to use any thicker saw in the sawing of said lumber than the saws recently used by Kramer and Dutch, and to saw as much of their lumber with the thinnest saw the size of the logs will admit of. Also to deliver the lumber in good order, outside mill, along the trackway on which lumber is delivered from said mill, and to saw said lumber in such sizes as from time to time Kramer and Dutch shall direct. All of said sawing to be done in one year from this 16th day of October, 1873. W. B. MATTHEWS."

The principal matter of controversy at the trial appears to have been whether Matthews should be allowed for sawing by log measure or board measure. If the lumber was to be measured in the log, then the mortgage, according to the special findings of the jury, had been fully paid. If, however, the price stipulated was for board measure, or the measure of the lumber itself, after being sawed, edged and hearted, then a considerable sum was still due on the contract and mortgage, and the verdict was wrong.

It was the province of the court to construe the contract, but if it was asked to, or did, instruct the jury on that point, the record does not disclose the fact.

From the answers of the jury to certain interrogatories, submitted by the defendants, it is apparent that they construed the contract as providing for log measure, and so found the mortgage to be satisfied.

The interrogatories and answers referred to are as follows:

"1. At log measure, how much sawing did Matthews do for the plaintiffs at 60 cents per 100, and how much at 50

cents per 100? Ans. Number of feet, 282,201, at 60 cents; number of other feet, 38,983, at 50 cents.

"3. What amount do you find paid by Matthews, in sawing, under the contract? Ans. $1,888.11.

"4. What amount has been paid in money or property, other than in sawing? Ans. $100, credit on note. No evidence how paid."

A calculation of the amount of sawing, by log measure, at the prices stated, in answer to interrogatory No. 1, gives the amount of payment in sawing, found in answer to No. 3.

The testimony of the mortgagor, Matthews, was, that the lumber sawed for the plaintiffs would measure one-fourth less than the measurement of the logs, and other witnesses placed the difference between log and board measure at from one-fifth to one-sixth. We think that the written contract will bear but one reasonable construction, which is, that the price stipulated was to be for lumber sawed and prepared for market. It provided that for sawing, edging and hearting walnut lumber, Matthews should be allowed sixty cents per hundred feet. When, under this clause, was the lumber to be measured? Evidently, after it had been sawed, edged and hearted, for, until that was done, it was not lumber such as the contract called for. A succeeding clause makes the meaning still plainer: By this it was agreed that Kramer and Dutch should be entitled to such of the edging strips as they might need for sticking lumber, provided they allowed for them what they would make thrown into board measure; "that is, what the sawing of them would come to at the same rates per hundred feet as other sawing." According to the theory on which this case was decided, the plaintiffs were to pay twice for sawing such strips as they might use; once in log measure, before sawing, and again in board measure, after sawing. This clause of the contract, on the contrary, as we construe it, provides for board measure for the *lumber* sawed; and the like meas-

ure for strips that did not come under the designation of lumber.

The contract further obligated Matthews to use due diligence to prevent any damage or waste to the lumber *or* logs of Kramer and Dutch. Again, the contract provided that Matthews should "deliver the *lumber* in good order, outside mill, along the trackway on which lumber is delivered from said mill, and to saw said lumber in such sizes as from time to time Kramer and Dutch shall direct."

By the term *lumber*, as used in these several clauses of the contract, we are clearly of the opinion that the parties meant the manufactured product of the logs, and we see nothing to justify an inference that it was used in any other sense.

It follows that the jury adopted a false basis in their estimate of the amount paid on the mortgage, and that the circuit court erred in overruling the motion for a new trial.

One witness for the defendants testified, over the objection of the plaintiffs, that, before the $1,500 contract was signed by Matthews, it was read over by the plaintiff Dutch, and that, as he then read it, the price for the sawing was to be log measure, by Scribner's Log Book. In rebuttal, Dutch denied that he so read the contract. If this testimony was proper to be considered by the jury, in giving a construction to the contract, their finding would be conclusive on that point; but we think it irrelevant, and entitled to no consideration. Matthews did not testify that any deception was practiced on him by misreading or otherwise, nor did it appear by his testimony, nor that of any other witness, that he did not or could not read the contract, nor that it was not drawn in strict conformity with the understanding and purpose of the parties.

The judgment of the circuit court ought to be reversed.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment below be, and it is hereby, in all things, reversed, at the costs of the appellees; and that said

cause be remanded with instructions to the Boone Circuit Court to sustain the motion of the appellants for a new trial.