No. 17,319.

Lake Shore and Michigan Southern Railway Co.
*v.* Peterson, by Next Friend.

Special Verdict.—*Railroad.—Rule as to Duty of Brakemen.—
Conclusion of Law.*—In an action against a railroad company, a
special finding as to the existence of a rule of the company relating
to the duties of brakemen, is the statement of a fact upon which
the court could determine, as a question of law, whether authority
had been given the brakeman to eject a trespasser on the train, and
such determination would not infringe any prerogative of the jury.

Same.—*Railroad.—Authority of Brakeman.*—In such case, if the
finding had been that the brakeman had or had not authority to
eject the trespasser, such finding would have stated the limit of the
issue, both as a question of fact and one of law, and would be ob-
jectionable.

Evidence.—*Burden of Proof.—Railroad.—Trespasser.—Authority
of Brakeman.*—In an action by a trespasser on a freight train, in-
jured by a brakeman, for damages, the burden is upon the plaintiff
to show that the brakeman who inflicted the injury possessed the
authority to do the act which resulted in the injury.

Railroad.— *Rule.— Brakeman.— Authority to Eject Trespasser.*—
Under the following rule of a railway company: "They [brake-
men] are under the immediate orders of the conductor or yard-
master with whom they serve, and must give him every assistance
in the performance of his duty. They are to ask and receive from
him all instructions necessary as to their duties. In general, they
are the servants and guardians of the train; to do all the work re-
quired during its trip, and protect it from danger,"—freight brake-
men are not authorized to eject trespassers generally.

Same.—*Authority of Brakemen.*—The fact that a conductor and two
brakemen were in charge of and managing a train does not carry
the inference that the brakemen had the authority co-equal with
the conductor, or that they had any authority other than that im-
plied from their position as brakemen.

New Trial.—*A Cause, if Tried Anew, Must Be on Same Theory.*
—A case cannot be tried upon one theory, and, when defeated, ob-
tain a new trial upon a different theory.

L. S. & M. S. Ry. Co. *v.* Peterson, by Next Friend.

From the Kosciusko Circuit Court.

*Baker & Miller*, for appellant.

*H. C. Dodge*, for appellee.

HACKNEY, J.—The appellee sued and recovered against the appellant for personal injuries alleged to have been sustained while being ejected from the appellant's freight train. The complaint disclosed no relation of passenger and carrier and alleged no right or authority in the appellee to go or remain upon the appellant's freight train, but proceeded upon the theory that the appellee was a trespasser. While so upon the train, it was alleged, one George Harris, appellant's rear brakeman on said train, ordered appellee from said train, while the same was running at a rate of speed rendering it dangerous for appellee to get off, and, when the appellee had hesitated and declined to get off, said brakeman pursued him with a bludgeon, cursed him and threatened to kill him; that, in fear of his life, and while excited, the appellee attempted to leave said moving train, when he slipped and fell to the ground and was run over by said train. The allegation of the complaint disclosing the theory that the brakeman, in what he did, was acting in the line of his employment was as follows: "That according to the rules and regulations in force at said time, the brakeman, George Harris, * * was constituted the servant and guardian of the said train * * and as such guardian of such train it was the duty of said George Harris to protect said train from danger during its trip, which it was then entered upon to Chicago, and from trespassers and from the presence of persons upon said train."

The theory of the complaint and that upon which the cause was tried and is here sought to be main-

tained is that the alleged duty of the brakeman was by the expressed general directions of the appellant.

Upon the trial the parties submitted to the jury certain interrogatories, which were answered and returned with a general verdict in favor of the appellee. The appellant moved for judgment in its favor, notwithstanding the general verdict, and the overruling of that motion presents one of the questions urged for reversal. Such of the interrogatories and answers as may possibly be relevant to the discussion are those of the appellee:

"First: Was Martin Peterson on top of a car of a train of defendant known as Third Number Forty-seven on October 25, 1891? Ans. Yes.

"Second: Is it not true that a brakeman by the name of George Harris ran after Martin Peterson while on top of train Third Number Forty-seven, with a club or stick uplifted and threatened said Peterson, and caused him to be frightened and fall off said train, in which fall said Peterson received the injuries mentioned in the complaint? Ans. Yes."

Those of the appellant:

"1. Was not plaintiff injured by falling from and being run over by west bound freight train No. 47, Third Section, on defendant's tracks in Elkhart west of Twelfth street? Ans. Yes.

"2. Was not A. C. Rossiter conductor in charge of train No. 47, 3d section, on the day of plaintiff's injury? Ans. Yes.

"3. Is not Twelfth street about five hundred feet west of Tenth street in said city of Elkhart? Ans. Yes.

"4. Was not said train 47, third section, standing east of Tenth street just before and at the time it started to pull out of Elkhart? Ans. Yes.

L. S. & M. S. Ry. Co. *v.* Peterson, by Next Friend.

"5. Did not said train 47, third section, at the time of injury to said plaintiff, consist of an engine at the west end of said train, 36 freight cars, and a caboose at the east end of said train? Ans. Yes.

"8. Was not plaintiff catching on to and riding on said train without the permission of the defendant? Ans. Yes.

"9. Was not plaintiff trespassing on the tracks and train of defendant on the occasion of his injury? Ans. Yes.

"17. Was not the speed of said train at the time plaintiff fell off from four to six miles per hour? Ans. Yes.

"18. Did rear-brakeman Harris drive plaintiff from said train, brandishing a club and using the language set out in the complaint? Ans. Yes.

"19. At and before the time of plaintiff's injury, were not the following rules regarding brakemen in force, which had been promulgated by defendant:

" 'OF BRAKEMAN.

" '96. On entering the service of this company they each procure a copy of the general rules on the time table and of these rules, and make themselves acquainted with them. They must then present themselves for examination by the Superintendent, who is charged not to accept any person not vouched for as of good morals, sober and industrious. They will be required to sign an acknowledgment as specified in rule 35.

" '97. They are under immediate orders of the conductor or yardmaster with whom they serve, and must give him every assistance in the performance of his duty. They are to ask and receive from him all instructions necessary to their duties.

" 'In general they are the *servants* and *guardians* of

the train; to do all the work required during its trip and to protect it from danger.

" '98. They should observe at every stop the condition of the journals, wheels, brakes and other parts of the cars, or of their attachments, which are likely to become heated, or to get out of order; and they must report any heating or derangement at once to the conductor.

" '99. They are expected to be orderly, polite and attentive to duty; to try to serve the company well and to deserve promotion. Conductors are instructed to replace men who fall short of these requirements by the employment of others who will fulfill them.

" '100. They are expected to make themselves familiar with the duties of conductors as defined in the general rules of the time table and in this book.

" '101. When employed on a passenger train, except when engaged in other duties, they must remain near the door, standing; unless the seat nearest the door is vacant, when they may sit down, but not otherwise. They must give constant attention to keep the coaches as comfortable, well ventilated and free from dust as circumstances will allow.

" '102. They must provide themselves with warm clothing sufficient to endure the longest exposure in storms and in winter. When on duty they must always have fog signals—torpedoes—in their pockets ready for instant use.

" '103. In applying the brakes they must take care not to slide the wheels, for that destroys the wheels, yet does not retard the train so much as to let the wheels turn slowly in the brakes. In approaching places at which a stop is to be made, they should apply the brakes in time to stop, and releasing them before starting; without any signal from the whistle.

" '104. They are particularly charged to study and

to understand rule 20 of the general rules upon the time table; for when a train breaks in two they can always prevent damage if they proceed exactly as therein directed, while they will be almost certain to cause destruction if they vary from the directions given.' Ans. Yes.

"20. At and before the time of plaintiff's injury, was rear-brakeman Harris directed by any officer or agent of defendant to put plaintiff off the train upon which he was riding? If so, by what officer or agent? Ans. No.

"21. At and before time of plaintiff's injury, was rear-brakeman Harris in any way directed or instructed by any officer or agent of defendant in regard to letting on, keeping off or ejecting persons from defendant's freight trains other than by rules set out in interrogatory 19? Ans. No."

The effect of the general verdict was to find that the brakeman was authorized by the company, or directed by some one in authority generally, to eject trespassers from the train. There is no question of the rule that the general verdict must stand until the answers to interrogatories are found to be in irreconcilable conflict with it. But counsel for the appellee insists that the answer which is urged to stand in conflict with the general verdict, that is to say, the answer to the nineteenth interrogatory consists of a mere statement of evidence and does not find the ultimate fact which, it is claimed, should have been that the act complained of was or was not within the scope of the brakeman's employment. The only rule of the company, found in the answer in question, which, by any possible construction, could be held to have given the brakeman express authority to eject trespassers was that numbered 97. It is that rule which is urged by the appellee as constituting express authority to

eject trespassers. In our opinion the existence or non-existence of such authority must depend upon the proper construction of that rule, since we have learned from the answers to the twentieth and twenty-first interrogatories that the brakeman had no general or special directions, as to removing persons from the train, other than those given in the rules included in the answer to the nineteenth interrogatory.

The duties of brakemen as to the carrying of torpedoes, the application of brakes, what should be done in case the train should break in two, as to learning the rules concerning conductors' duties and the rules upon the time table, can have no bearing upon the question of the existence of express power to remove trespassers. Nor can the existence of other and undisclosed rules leave the question in doubt as to whether they contained express authority on the subject, for any such doubt is dispelled by the answers to the twentieth and twenty-first interrogatories. The nineteenth interrogatory and answer, in the light of what we have said, are, as if the jury had stated specially by their verdict: The brakeman, Harris, had only such directions and instructions to eject the plaintiff, or persons generally, as are contained in the following rule of the company as to its brakemen: "97. They are under the immediate orders of the conductor or yard master with whom they serve, and must give him every assistance in the performance of his duty. They are to ask and receive from him all instructions necessary as to their duties. In general, they are the servants and guardians of the train; to do all the work required during its trip and protect it from danger." In our opinion such a finding would involve not simply an item of evidence, but the statement of a fact upon which the court could determine, as a question of law, whether authority had been

given the brakeman as claimed by the plaintiff.   The fact so stated involved a question of construction which the court could pass upon without infringing any prerogative of the jury.   This conclusion is made manifest by the further conclusion that if the plaintiff or defendant had asked the trial court to give an instruction embodying rule ninety-seven and announcing a construction thereof, the court would have been required to give it and not submit the question of construction to the jury.   This conclusion is the necessary result of the rule which makes the construction of all written evidence a question for the court. *Kreigh* v. *State*, 17 Ind. 495;   *Dutch* v. *Anderson*, 75 Ind. 35;   *Turner* v. *First National Bank*, 78 Ind. 19; *Louthain* v. *Miller*, 85 Ind. 161;   *Dixon* v. *Duke*, 85 Ind. 434;   *Over* v. *Schiffling*, 102 Ind. 191;   *Over* v. *City of Greenfield*, 107 Ind. 231.

Of the control of the question involved in the inquiry as to the scope of an agency, Judge Elliott has said, in his work on the General Practice, section 426, that "Where the facts are undisputed or the authority is conferred by a writing, the scope of such authority is generally a question of law for the courts," citing *Mobile & O. R. R. Co.* v. *Thomas*, 42 Ala. 672;   *Ludwig* v. *Gorsuch*, 154 Pa. St. 413 (26 Atl. R. 434); 4 Mo. App. 576;   *Loudon Sav. Fund Soc.* v. *Hagerstown Savings Bank*, 36 Pa. St. 498–502.

If, as appellees' learned counsel insists, the finding had been that the brakeman had or had not authority to eject, such finding would have stated the limit of the issue, both as a question of fact and one of law, and would have been objectionable.   *Manning* v. *Gasharie*, 27 Ind. 399.   It would have deprived the court of all privilege of passing upon the fact and would have been as conclusive of inquiry as the gen-

eral verdict.    It would have violated the rule that special findings should not embody statements of conclusions of law or fact as laid down in the case of *Chicago, etc., Ry. Co.* v. *Burger,* 124 Ind. 275, and the numerous cases there cited.    Such conclusions are never permitted unless the fact sought is incapable of statement without involving the question of law; or unless there is no standard by which the legal conclusion can be measured without a statement of the conclusion of fact.    *Perkins* v. *Hayward,* 124 Ind. 445.

In Elliott Gen. Pr., section 931, it is said that "a finding as to the legal effect of a deed or of certain circumstances constituting notice, has been held to be a conclusion of law."    *Miller* v. *Shackleford,* 4 Dana (34 Ky.) 264; Bacon's Abridg. Verdict E.; *Hankey* v. *Downey,* 3 Ind. App. 325.

There is, therefore, no objection to the form of the interrogatory or the answer thereto as being merely evidentiary.

Upon the question of the conflict between the gentral verdict and the answers to special interrogatories said to exist, there is little doubt of its importance and controlling influence upon the case.    As we understand counsel for appellee, it is not insisted that it is essential to the appellee's recovery that brakemen have implied authority to eject trespassers from the freight trains upon which they are employed, nor that the burden of showing that the act complained of was within the scope of the brakeman's employment rested upon the appellant.    However, we take the rule to be free from doubt that the burden rests upon the injured trespasser to show that the brakeman inflicting the injury possessed the authority to do the act which resulted in injury.    *Forber* v. *Mo. Pac. Ry. Co.,* 116 Mo. 81; *Corcoran* v. *Concord & M. R. Co.,* 56

Fed. Rep. 1014, (6 C. C. A. 231); *Bess* v. *Chesa-peake, etc., R. R. Co.*, 35 W. Va. 492 (29 Am. St. Rep. 820); *Towanda Coal Co.* v. *Heeman*, 86 Pa. St. 418; *Texas & P. Ry. Co.* v. *Moody*, 23 S. W. Rep. 41; *International, etc., Ry. Co.* v. *Anderson*, 82 Tex. 516 (27 Am. St. Rep. 902); *Marion* v. *Chicago, etc., Ry. Co.*, 59 Ia. 428; 2 Wood Railroads, p. 1382, section 316. As in conflict with this doctrine, however, the appellee cites the cases of *Hoffman* v. *New York, etc., R. Co.*, 87 N. Y. 25; *Kansas City, etc., R. Co.* v. *Kelley*, 36 Kans. 655; *Carter* v. *Louisville, etc., Ry. Co.*, 98 Ind. 552.

In the first of these cases the plaintiff was a trespasser on a passenger train and was kicked therefrom by the conductor or brakeman. The objection to liability was that the act was not within the scope of the employment of those "in charge of the train." The court held, without attempting to discriminate as between the authority of a conductor and a brakeman, or as between the implied authority of servants upon a passenger train and a freight train, that the act of ejecting the trespasser was, if by a brakeman, within the implied authority of his employment. In the second of the cases cited by the appellee the plaintiff was a trespasser upon a freight train, and was injured while being ejected by a brakeman. The evidence of one of the brakemen on the train was that "I was to keep them off of my end of the train and he was to keep them off of his." Though unnecessary to place the case upon that ground, the court held that implied authority existed in a brakeman to eject trespassers. The Indiana case cited is placed distinctly upon the ground, not of an implied authority in a brakeman to eject, but upon the allegation of the complaint that those who had been put in charge and

control of the engine to do switching had implied authority to remove trespassers from the engine. The first two of the cases cited by the appellee, if they were adverse to our view, are, as we believe, contrary to the decided weight of authority so far as they may be held to sanction the rule that implied authority is given a freight brakeman to eject trespassers from the train. The case of *Carter* v. *Louisville, etc., Co., supra,* is clearly distinguishable from the present case. The implied authority in the servant there was from his being placed in charge and control of the engine. It was implied as it is implied that a conductor has authority to control the movements of persons upon his train. It was not implied because the servant was a fireman or an engineer, but, as stated in the opinion, because he was one in charge and control of the engine. In *Towanda Coal Co.* v. *Heeman, supra,* a small boy was discovered, by a brakeman, upon a running freight train, when the brakeman threw coal at him, striking him in the face, and in his effort to get off he slipped and fell, sustaining injury. It was held that freight brakemen have no implied authority to eject trespassers. This case was cited in *Carter* v. *Louisville, etc., Co., supra,* and distinguished from that in the manner we have shown. Several of the cases we have cited are of like character to that of *Towanda Coal Co.* v. *Heeman, supra.*

To return to the question as to whether conflict existed between the general verdict and the special interrogatory and answer, numbered nineteen, it must be borne in mind that rule ninety-seven must be found to constitute authority to the brakeman to eject trespassers generally, or the general verdict affirming such authority cannot stand. In our opinion it does not constitute such authority. Its proper construction constitutes the brakeman a servant "to do all the

work required during" the trip and a guardian to protect the train from danger during such trip. There is nothing in the language, when all of its parts are considered together, implying a general guardianship of the train, and, by an express finding of the jury, the train was in charge of a conductor, Rossiter, who, under the authorities cited by us, held the guardianship of the train generally and, as to the ejection of trespassers, particularly. There is nothing in the theory of the case, either upon the pleadings or the evidence, implying that the appellee's trespass, though made a crime by the laws of this state, was such as to suggest danger to the train or to invite interference from the brakeman under his authority to protect the train from danger. Authority to protect the train from danger is far from authority to violently drive from the train a person attempting to steal a ride or cross from one side of the train to the other.

There is no hypothesis upon which the general verdict, finding express authority to eject, can be reconciled with the special finding that rule ninety-seven was the only express authority to eject. In this view of the question the circuit court should have sustained the appellant's motion for judgment *non obstante veredicto*, and the judgment is reversed, with instructions to that court to sustain said motion.

Filed December 20, 1895.

### On Petition for Rehearing.

Hackney, C. J.—The petition for a rehearing has been supported by a very earnest and elaborate brief by appellee's counsel. Much has been said of this court's misconception of the theory of the case as outlined by the complaint, and, since the proper view of

every question in the case must depend upon the true theory of the case, we have again studied carefully the complaint, interrogatories and original briefs, in connection with the present brief. But one of two theories was possible, namely: the brakeman had express authority to eject trespassers or he had implied authority to do so, if the appellee could recover. Counsel does not claim to have embodied both of these theories in his complaint, and, if he did, it would not support him upon the rule that a cause of action must proceed upon some single definite theory. We regarded it then, as we now regard it, to the credit of the counsel who drew the complaint, that he placed it upon the theory of an express authority, since it is, without doubt, we think, the law that such authority as to freight brakeman will not be implied from the general nature of his employment. In this conclusion counsel concurs with us. He quotes from Wood on Rys., cited by us, as follows: "The conductor of a train, being in charge of it, and having full control of it for the time, represents the company as to any matter connected with its management and control, and for an act done by him in the line of his duty, as by the ejection of a trespasser from the train, etc., the company would be unquestionably liable; but for the act of a brakeman of the train, who, without the directions of the conductor, should remove a trespasser from the train, the company would not be liable, unless express authority to do an act, to which the act complained of is incident, is shown, because the act is not one which comes within the scope of his duty." Counsel then says: "I have no contention as to that."

In further discussion of the theory of the case, counsel says, after quoting an extract from his former brief: "Clearly and unmistakably indicating and showing that my contention was that this power

charged to have been conferred on Harris was implied from the circumstances, the method of doing business, the book of rules and all other sources of evidence which could be introduced; *knowing full well, and realizing all the time and never assuming that anybody else would not know, that there was no possibility of a claim that rule 97 or any other rule contained express authority for a brakeman to eject a trespasser from a railroad train.*"

Again, he says: "Had I advanced the theory that there was express authority conferred by the printed rules and regulations to put the trespasser off the train, why would I have introduced in evidence rule 97? Is it contended that I was unable to read the plain English before me? Or have I the hardihood to write to this court that such authority was contained in that rule?" And again counsel says: "Appellee never has contended that express authority was given to Harris to eject the plaintiff from the train." It will be seen, therefore, that not only does counsel assent to the doctrine of Wood: the non-liability upon implied authority, but renounces the claim of express authority and confirms all that we have said in the original opinion as to the construction of the rules and the finding of the jury that there was no express, general or particular authority to the brakeman to eject the appellee or other trespassers. Nothwithstanding these vehement protests against the theory of express authority, counsel, in his original brief, devoted nearly seven pages thereof to a discussion of the construction and effect of the rules set out in the interrogatories to give brakemen authority to eject trespassers. He dwelt particularly upon rule 97, and quoted the definitions, from Webster, of the word "guardian," employed in said rule. In one instance, he said: "The language of that rule means just what

it says: the brakeman is a *servant* of the train when acting under direct personal orders given him by the conductor or yardmaster. He is *guardian* of the train when following general rules and regulations and acting on his own judgment and discretion, not in the presence of his superior." Again he said: "The very nature of the terms 'In general terms they are the *servants* and *guardians* of the train,' construed in the light of the exact facts shown by interrogatories 5 and 7, show conclusively the meaning intended, namely, the brakeman had general authority to act whenever, in his judgment, action was necessary. * * * * The meaning of the rule is just what the language imports. In the absence of specific orders given by the conductor or yardmaster, the brakeman has general authority to perform any and every act which, in his judgment, seems necessary to the management of the train." This proposition was repeated again and again with reference to the various rules contained in the interrogatories.

Another statement of that brief indicating the appellee's theory of the case is as follows: "The allegations in the complaint found to be true by the general verdict, and which these interrogatories and rules are assumed to overthrow, are as follows: 'That according to the rules and regulations—not rules—in force at said time, the brakeman, George Harris, brakeman as aforesaid, was constituted the servant and guardian of the train upon which said Martin Peterson climbed for the purpose aforesaid, and, as such guardian of such train, it was the duty of said George Harris to protect said train from danger during its trip which it was then entered upon to Chicago, and from trespassers and from the presence of persons upon said train." Transcript, p. 3, 1. 20-27. And after describing the injury and manner of its infliction, proceeds:

"All from the fault of the wrongful and unlawful act of said George Harris in performance of his duties as aforesaid to said defendant." These very allegations were quoted by us in the original opinion, omitting that at the close of the above quotation, for the one purpose of demonstrating our conclusion that the appellee's theory was to declare upon express authority given by the rules. The counsel so used the quotation as clearly indicated by his claim that the effect of the general verdict was to affirm those allegations. We omitted the allegation, "all from the fault of the wrongful and unlawful act of said George Harris in performance of his duties as aforesaid to said defendant," because we then believed, and still believe, that it was a mere general conclusion, and not a statement of facts. The numerous glaring inconsistencies in the positions taken by counsel, as we have shown, receive additional confusion by the further contention, upon this petition, that the whole theory of the cause of action was centered in an allegation, not referred to on the original hearing, except as it appeared in the copy of the complaint printed in the brief, and which allegation was introduced in reciting the facts and occurrences leading up to the assault and preceding the above quoted allegation as to the authority of the brakeman. It is as follows: "That in charge of and managing said train was a conductor by the name of Rossiter and two brakemen, one of whose name was George Harris, who was what is known as the 'rear-brakeman.'" This general statement, purely historical and not designed to control the specific allegation of the brakeman's authority, is now enough to be introduced as the essence of the cause of action.

Some of the misfortunes attending this new theory are that specific allegations control general state-

ments; that the allegation that a conductor and two brakemen were in charge of and managing the train does not carry the inference that the brakemen had authority co-equal with the conductor, or that they had any authority other than that implied from their position as brakemen, and that the jury expressly found that Rossiter was conductor in charge of the train. As said in Wood, *supra,* if the conductor had ejected the appellee there would have been liability because of the implied authority arising from his being in charge of the train, and that a brakeman so ejecting, without directions from the conductor, would not render the company liable "unless express authority to do an act, to which the act complained of is incident, is shown, *because the act is not one which comes within the scope of his duties.*" This new theory, it is urged, is in line with the case of *Carter* v. *Railway, supra,* and that the original opinion is at variance with that case.

If this new theory were the correct theory of the cause of action, the Carter case would possibly support it, but not being the true theory, it is clearly distinguishable, and was distinguished in the original opinion. This much has been written to demonstrate, even to the conviction of appellee's counsel, that our analysis of the cause of action, as originally given, was correct, and that we were not overreached by the ingenuity of appellant's counsel, nor misguided by the lack of proper acquaintance with the record. There is no occasion to review the numerous cases cited by counsel upon the general doctrine that the master is liable for the torts of his servants committed within the scope of his employment and duties. This doctrine is conceded.

An appeal is made to change the mandate in this case so as to order a new trial instead of a judgment

upon the appellant's motion.  To do so would be to express our doubts as to the correctness of the answers of the jury to the interrogatories, and of this we have no doubt. While fully recognizing the rule that where justice seems to demand it, this court may direct a new trial, we are convinced that upon the cause of action pleaded the appellant was entitled to judgment.  Whether it might have been different upon some other theory of the cause is not for us to say, and certainly it is not in the interest of justice and the peace of society that we should recognize a rule which would permit the trial of a cause upon one theory, and, when defeat comes, permit another trial, and so on, that successive theories may be separately tried as long as the plaintiff's ingenuity can devise them.

The petition is overruled.

