SOUTHERN RY. CO. v. JACKSON (Two Cases).—129 S. W. (2d), 1094.

Eastern Section. April 8, 1939.

Petition for Certiorari denied by Supreme Court June 10, 1939.

Ben F. Alexander, of Clinton, and Charles H. Smith, of Knoxville, for plaintiff in error.

Jennings & O'Neil and Howard F. Jarvis, all of Knoxville, and Homer Wallace, of Clinton, for defendants in error.

McAMIS, J. These two cases, tried together below by agreement and here upon a single transcript, involve the liability of the Southern Railway Company for personal injuries sustained by Addison A. Jackson, a boy thirteen years of age, when he was ejected or forced

to swing from a freight train of the Southern Railway Company. Addison A. Jackson, suing by next friend, recovered a judgment in the sum of $1,500. His mother, Cora Jackson, suing for loss of services and medical bills, recovered a judgment in the sum of $500. Both cases were tried before the court and a jury.

At the conclusion of plaintiffs' proof in chief the defendant moved the court to peremptorily instruct the jury to return a verdict in each case in its favor. This motion was overruled and the defendant elected to stand on said motion, declining to introduce any proof. The cases were thereupon submitted to the jury with the result indicated. Its motions for a new trial having been overruled, the defendant below, Southern Railway Company, has appealed in error to this court.

Both declarations aver, in substance, that on the 12th day of May 1938, the date on which Addison A. Jackson was injured, the defendant owned and operated a certain railway running through the Town of Coal Creek; that Addison A. Jackson, with several other boys, boarded one of defendant's trains being operated by defendant in the Town of Coal Creek for the purpose of riding thereon, and that while the train was in motion the engineer in charge squirted hot water upon him by means of a hose connected with the boiler of the engine, causing him, in an effort to avoid being struck by the water, to lose his footing and fall into such position that a wheel of the car on which he was riding passed over his foot amputating some of the toes and necessitating an amputation of the remainder of his toes on that foot by a surgical operation.

The declarations aver that defendant had expressly ordered and directed its employees in charge of its trains to order off and remove trespassers thereon and both declarations contain the specific averment that "when defendant's said engineer and fireman in charge of the running and operation of its said train ordered the plaintiff to get off said car, as aforesaid, and threw hot water on plaintiff . . . defendant's said engineer and fireman acted in obedience to the rules, regulations and express orders of the defendant, and within the scope of their employment and duty as laid down and prescribed by the defendant . . . they did not act willfully nor maliciously toward the plaintiff, but intended to act within the scope of their duty and in obedience to the rules, regulations and orders of the defendant."

██ Though the contrary is plausibly insisted, we think the averment that the engineer, in throwing hot water on plaintiff, did not act wilfully or maliciously toward the plaintiff, taken in connection with its context, may not properly be construed to exclude, as a basis for recovery, willful and wanton negligence on the part of the defendant. Immediately preceding this portion of the declaration it is stated that the engineer and fireman did not know plaintiff and had no illwill or malice toward him. Looking to the averments of the declaration as a whole, as we must, we think it may fairly and reason-

ably be construed to mean that, in throwing water on plaintiff, the engineer and fireman did not deviate from their line of duty upon a personal impulse of malice or illwill but, in committing the act which caused plaintiff to fall, acted within the course and scope of their employment, making the act, because committed while acting within the course and scope of their employment, an act of the defendant.

By the first and second assignments of error defendant complains of the refusal of the trial court to direct a verdict in its favor upon the ground that there is no evidence to support the verdict of the jury. Under these assignments it is insisted that (1) there is no proof that the engineer or fireman, in throwing water on plaintiff, acted in obedience to rules, regulations and express orders of the defendant, and (2) that such an act did not fall within the implied or apparent scope of employment of such employees.

It is true, as insisted, that there is no direct evidence that defendant had any rules or regulations requiring its employees to remove trespassers from its trains or that the fireman and engineer who threw water on plaintiff acted under express orders from defendant. However, sufficient facts are alleged in the declaration from which an implied common law duty to remove plaintiff, a boy thirteen years of age, may be deducted and we think the specific averment that the employee who threw the water on plaintiff acted under rules, regulations and express orders of the defendant does not prevent a recovery upon the ground of a breach of such common law duty. The declaration charges that, in the commission of the act complained of, the fireman or engineer acted within the course and scope of his employment. The fact that plaintiffs averred but failed to prove that the servant or agent of defendant acted under express authority is immaterial if other facts and circumstances are made to appear from which the jury might conclude that the employee acted within the course and scope of his employment as charged in general terms in the declarations.

This question deals with the manner of establishing, by proof, the cause of action averred in the declaration and is not to be related, as counsel insist, to the question of proving a cause of action not falling within the scope of the declaration. The cause of action, i. e., the throwing of water on plaintiff while in a dangerous position, remains the same whether the employee who committed the act was vested with express authority to remove trespassers or whether such authority was only to be implied from the circumstances. For this reason the case of East Tennessee Coal Co. v. Daniel, 100 Tenn., 65, 42 S. W., 1062, and other cases cited by counsel for defendant are not in point.

Upon the question of implied authority, it is well to observe that the proof is subject to the inference that the water was thrown by the engineer, rather than by the fireman. That this inference was

open to the jury appears to be conceded by counsel for defendant and many cases, including Polatty v. Charleston and W. C. R. Co., 67 S. C., 391, 45 S. E., 932, 100 Am. St. Rep., 750; Chicago etc., R. Co. v. Doherty, 53 Ill. App., 282; Carter v. Louisville N. A. & C. Ry. Co., 98 Ind., 552, 49 Am. Rep., 780, and Lake Shore & M. S. Ry. Co. v. Peterson, 144 Ind., 214, 42 N. E., 480, 43 N. E., 1, apparently holding that the authority of an engineer to evict trespassers is confined to the locomotive in his charge and parts of the train immediately adjacent to the locomotive, are cited. Other cases to the effect that the duty of evicting trespassers rests upon the conductor in charge of the train are also cited in defendant's brief.

In this case plaintiff was on the second car from the locomotive on the end nearest to the engineer but we need not determine whether his position was such as to bring him within the rule of the cases cited holding the engineer authorized by implication to remove only trespassers from an adjacent portion of the train. We think such authority is to be implied in this case for two reasons.

In the first place, there is no showing as to whether the train was in charge of a conductor. The engine in question was engaged in switching cars and there is no reason to presume that it was in charge of a conductor. In the absence of a conductor the duty of evicting trespassers would devolve upon the engineer in charge. Whether or not this train was in charge of a conductor was a matter peculiarly within the knowledge of defendant.

In the second place, whatever may be said of the authority of an engineer to evict adult trespassers, we think upon humanitarian principles defendant owed a common law duty upon finding a boy of plaintiff's age trespassing upon its train to remove him at once or stop the train. As the one in immediate charge and control of the force controlling the movement of the train, we think the engineer had implied authority to act for defendant in discharging its common law duty to plaintiff of protecting him from danger. Quick action was called for to save plaintiff from possible injury from falling under the moving train and to save defendant from liability for such an injury. We conclude that the engineer had authority, as a matter of necessity, to act for defendant under these circumstances.

While we think the jury was warranted in finding that the engineer acted in furtherance of defendant's interests and within the course and scope of his employment, it would seem, under authority of Nashville & Chattanooga Railroad Co. v. Starnes, 9 Heisk 52, 56 Tenn., 52, 24 Am. Rep., 296, that such a finding is not necessary to sustain liability.

In that case employees of the Railroad Company unnecessarily blew the whistle on the locomotive causing plaintiff's team to become frightened and run away. In holding the Company liable the Supreme Court said: ''But if in the control of his engine, and while

at his post in the line of his employment he wantonly uses his engine for the purpose of sport or malice to another's injury, then we can see no good reason why the corporation should not be liable; where in the language of the authority cited, 'he is acting with the instruments which the company has placed in his hands, to be used on their behalf, upon the line of their road: he is acting instead of the corporation, and his acts will bind it, whether done heedlessly or purposely.' The ground on which the master at common law avoided responsibility for the wilful acts of his servant was that they were not done in the course of his employment. If they be so done, the master is liable.''

The force used to effect the removal of plaintiff from the train was excessive under the circumstances or, otherwise stated, exposed plaintiff to an unnecessary danger. We conclude that there is material evidence to support the verdict of the jury and that defendant's motion for peremptory instructions was properly overruled.

The third assignment of error is directed to the refusal of the court to strike from the record certain testimony of plaintiff to the effect that a brakeman on another train on another occasion had thrown sticks at him in an effort to get him off the train. No objection was made to this testimony when introduced but the motion to strike was made before the case was submitted to the jury.

Since the undisputed evidence in the record makes out a case of liability and the evidence to which the motion was directed does not relate to the amount of the damages sued for, we are unable to see how this evidence, if erroneously admitted, affected the result of the trial. The assignment is, accordingly, overruled.

By the fourth assignment of error it is insisted the court erred in charging the jury that defendant would be liable for the acts of its employees in carrying into effect the rules and regulations of the defendant with reference to removing trespassers from moving trains and engines. The predicate of this insistence is that there was no proof before the jury showing the existence of such rules and regulations.

It is true, as insisted, that the charge complained of was not appropriate to any proof in the record but, since in the view we have taken the uncontradicted proof made out a case of liability, we are unable to see wherein this charge operated to the prejudice of defendant.

While the giving of abstract instructions is never to be approved (National Life & Accident Insurance Co. v. American Trust Co., 17 Tenn. App., 516, 68 S. W. (2d), 971) such instruction is not reversible error, unless it appears probable that the jury were thereby misled, to the prejudice of the complaining party. O'Rourke v. Street Railway Co., 103 Tenn., 124, 52 S. W., 872, 46 L. R. A., 614, 76 Am. St. Rep., 639.

For the reason indicated, the fourth assignment of error is over-ruled.

The fifth assignment is based upon the court's refusal to charge the jury that plaintiffs could not recover unless it appeared from the proof that the engineer or fireman was acting in obedience to the rules of the defendant in throwing hot water on Addison Jackson as a trespasser. As we have indicated, in view of Addison Jackson's age, a common law duty based upon humanitarian principles rested upon defendant to remove him from a place of danger upon its train. Such duty rested upon the engineer who saw him in close proximity to the engine under his charge and control in a place of potential danger and, for this reason, the charge requested was properly refused. The fifth assignment is, accordingly, overruled.

By the sixth assignment it is insisted the court erred in charging the jury that defendant would be liable if its employees in charge of the train, while acting within the general or apparent scope of their authority as such, undertook to remove Addison Jackson from the train but employed such means and such force as were not reasonable but wrongful and wanton. A two-fold criticism is leveled at this portion of the charge: (1) that it permits the jury to determine whether the employees were acting within the general or apparent scope of their authority when there was no proof of the nature of their duties, and (2) that the court instructed the jury that the defendant would be liable if, from the greater weight of the testimony, it appeared that defendant used more force than was reasonable and acted wrongfully and wantonly.

What has been said above with respect to defendant's common law duty is applicable to the first criticism. In support of the second criticism it is insisted that it was error to charge the jury with respect to wrongful and wanton acts of defendant's employees because the declaration specifically alleged that said employees did not act willfully or maliciously toward Addison Jackson in throwing hot water upon him. As we have hereinabove construed the declaration, this charge was intended to remove the implication of any personal animosity or ill-feeling on the part of the engineer toward Addison Jackson and to make the act complained of the act of defendant. We see nothing harmful to defendant in requiring the proof to be such as to justify a finding of wanton or wilfull negligence.

The seventh and eighth assignments of error relate to defendant's duty of removing trespassers from its trains. The court charged the jury that such duty rested upon defendant. Without determining the general correctness of this charge, we think, as applied to a boy of plaintiff's age, the charge complained of was proper.

Finally it is insisted the verdict in the sum of $1,500 in favor of Addison Jackson and the verdict of $500 in favor of his mother for

loss of services, etc., are so excessive as to indicate passion, prejudice and caprice on the part of the jury.

The proof shows that the great toe was cut off and the remaining toes on that foot so mashed and cut that it was necessary for them to be amputated with the result that all the toes on that foot were lost. A doctor's bill and ambulance bill in the amount of $108 were incurred in treating plaintiff. He was cared for in bed at his home for some weeks and his foot had not healed at the time of the trial, four months after he was injured.

 We think the jury warranted in finding such an injury incapacitating to some extent, especially in times when there is a surplus of labor and industry will not employ persons with physical handicaps and who cannot pass a perfect physical examination. Plaintiff will, therefore, be to some extent incapacitated for life and, considering the rather painful nature of his injuries, we think the verdict in his behalf not excessive to the extent that it may be said that the jury acted upon passion, prejudice or caprice. We think the same may be said of the verdict for $500 in favor of plaintiff Cora Jackson for loss of services, etc.

 The insistence that the verdicts are so large as to justify a remittitur appears to be based, in part at least, upon the charge that Addison Jackson was guilty of contributory negligence though this question was not raised in the trial court. There is evidence from which the jury may have concluded that the sole cause of plaintiff's injuries was the wilfull act of the engineer in throwing hot water upon him. If so, the issue of contributory negligence does not arise.

We find no error in the judgments below and it results that all assignments of error must be overruled and the judgments below affirmed with costs.

Portrum and Ailor, JJ., concur.